Kathy KEETON, Plaintiff, Appellant,

v.

HUSTLER MAGAZINE, INC., et al.,
Defendants, Appellees.

No. 81–1489.

United States Court of Appeals,
First Circuit.

Argued Jan. 6, 1982.

Decided June 16, 1982.

Jeffrey H. Daichman, with whom W. Michael Dunn, Sheehan, Phinney, Bass & Green, Professional Association, Manchester, N. H., Norman Roy Grutman, and Grutman, Schafrann & Miller, New York City, were on brief, for appellant.

C. William Brownfield, Columbus, Ohio, with whom Dort S. Bigg, Gregory A. Holmes, Wiggin & Nourie, Manchester, N.

H. and Brownfield, Bowen, Bally & Sturtz, Columbus, Ohio, were on brief, for appellees.

Before COFFIN, Chief Judge, BOWNES and BREYER, Circuit Judges.

BREYER, Circuit Judge.

The plaintiff-appellant in this case is a resident of New York who claims that she was libeled by photographs and comments that appeared in "Hustler Magazine" and "The Best of Hustler." She sues several Ohio corporations and one California resident involved in the enterprises that published the "libelous" materials. Originally she brought suit in Ohio, where the magazines were published. There, her libel claim was dismissed as barred by the Ohio statute of limitations and her invasion of privacy claim was dismissed as barred by the New York statute of limitations, which the Ohio court considered to be "migratory." Plaintiff then brought this suit in New Hampshire, which, she says, is the only state remaining in which the statute of limitations has not run. The relevant New Hampshire "long arm" statutes (see appendix) authorizing service of process on defendants seek to extend jurisdiction over nonresidents to the fullest extent permitted under the federal constitution. *Leeper v. Leeper*, 114 N.H. 294, 296, 319 A.2d 626 (1974); *Roy v. North American Newspaper Alliance, Inc.*, 106 N.H. 92, 95, 205 A.2d 844 (1964). The federal district court dismissed this suit on the ground that the federal constitution—in particular the Due Process Clause of the Fourteenth Amendment—would not permit New Hampshire to exercise jurisdiction over defendants in this instance. We affirm its decision.

The district court reasonably concluded that defendants' contacts with New Hampshire consist of sending magazines there to be circulated through independent distributors. Their circulation in New Hampshire amounts to less than one percent of their total circulation in the United States. Plaintiff's contacts with New Hampshire consist of the facts that her name is listed

as a corporate officer or staff member of a magazine ("Penthouse") and that she is an editor of others ("Viva" and "Omni") which have also circulated in New Hampshire. The basic legal standard imposed by the Due Process Clause is whether it is "reasonable" or basically "fair" to subject the defendant to suit in this forum under these circumstances. *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Seymour v. Parke, Davis & Co.*, 423 F.2d 584 (1st Cir. 1970). And, the Supreme Court has recently provided guidance for interpreting the "reasonableness" standard. In *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980), it wrote,

> Implicit in this emphasis on reasonableness is the understanding that the burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of other relevant factors, including the forum State's interest in adjudicating the dispute, *see McGee v. International Life Ins. Co.*, 355 U.S. 220, 223 [78 S.Ct. 199, 201, 2 L.Ed.2d 223] (1957); the plaintiff's interest in obtaining convenient and effective relief, *see Kulko v. California Superior Court*, [436 U.S. 84, 92 [98 S.Ct. 1690, 1696, 56 L.Ed.2d 132] (1978)], at least when that interest is not adequately protected by the plaintiff's power to choose the forum, *cf. Shaffer v. Heitner*, 433 U.S. 186, 211, n.37 [97 S.Ct. 2569, 2583, 53 L.Ed.2d 683] (1977); the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies, *see Kulko v. California Superior Court, supra* 436 U.S. at 93, 98 [98 S.Ct. at 1697, 1700.]

Thus, the Supreme Court would have us judge "reasonableness" and "fairness" not exclusively from the point of view of defendants' contacts with the state. To the contrary, "[i]f a defendant has certain judicially cognizable ties with a State, a variety of factors *relating to the particular cause of action* may be relevant to the determination whether the exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *Rush v. Savchuk*, 444 U.S. 320, 332, 100 S.Ct. 571, 579, 62 L.Ed.2d 516 (1980) (emphasis supplied). We have previously noted the relevance of all these factors, *Seymour v. Parke, Davis & Co., supra*, as has the State of New Hampshire in interpreting its jurisdictional statute. *Leeper v. Leeper*, 114 N.H. at 296, 319 A.2d 626.

Applying these standards to this case, we first note that defendants' contacts with the state are minimal; they have no offices, employees, bank accounts, real property or other business connections there. Plaintiff's contacts are even fewer, consisting of her name on the masthead of, at most, three magazines. And, New Hampshire's interest consist of a desire to deter wrongful conduct within its boundaries, *Leeper v. Leeper*, 114 N.H. at 298, 319 A.2d 626, a desire to protect its citizens from reading libels about outsiders. *Curtis Publishing Co. v. Birdsong*, 360 F.2d 344, 347 (5th Cir. 1966), or a desire to prevent injuries to the reputations of outsiders from occurring within the state because those outsiders may someday be hurt if they turn up in New Hampshire or because there may be a spillover effect on their reputations elsewhere. There is no allegation suggesting that the allegedly defamatory publication was "aimed exclusively" or primarily at New Hampshire, *see Edwards v. Associated Press*, 512 F.2d 258, 267–68 (5th Cir. 1975), or that it caused a "substantial effect" on that state, *see Anselmi v. Denver Post, Inc.*, 552 F.2d 316, 325 (10th Cir.), *cert. denied sub nom. Times Mirror Co. v. Anselmi*, 432 U.S. 911, 97 S.Ct. 2960, 53 L.Ed.2d 1084 (1977); *Church of Scientology of California v. Adams*, 584 F.2d 893, 898 (9th Cir. 1978).

The major factor favoring plaintiff is that she is suing in part for damages suffered in New Hampshire. Case law makes clear that defendants' few contacts with New Hampshire—sending in magazines— would be sufficient to support a suit by a New Hampshire resident for libel occurring in New Hampshire. *Buckley v. New York Post Corp.*, 373 F.2d 175 (2d Cir. 1967); *see*

*Curtis Publishing Co. v. Golino*, 383 F.2d 586, 591–92 (5th Cir. 1967). *See also* R. Sack, *Libel, Slander and Related Problems* 509–10 (1980). In such case, defendant's minimal presence would combine with plaintiff's many contacts, New Hampshire's interest in protecting its residents, and the fact that defendant's presence itself caused the injury—in making it fair to allow the suit. The Supreme Court has also suggested that if the defendant has launched "its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State," an out-of-state plaintiff might be able to sue in the forum state for in-state injury. *See World-Wide Volkswagen v. Woodson*, 444 U.S. at 297–98, 100 S.Ct. at 567–68.

The major factor favoring defendants is that *most* damages that plaintiff seeks arose *outside* the state of New Hampshire. We held specifically in *Seymour v. Parke, Davis & Co., supra*, that an out-of-state plaintiff could *not* bring against an out-of-state defendant (with a few state contacts) a suit based upon out-of-state activity. Although at least one Supreme Court case has allowed an "out-of-state plaintiff/out-of-state defendant/out-of-state activity" suit, *Perkins v. Benguet Consol. Mining Corp.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), in that case the Court noted defendant's intense "continuous and systematic business contacts" with the forum state (offices, corporate officers, secretaries) and that the only alternate forum was highly inconvenient (the Philippines)—factors missing both in *Seymour* and here.

In other words, *Buckley* combined with *Volkswagen* would seem to allow this suit insofar as it alleges New Hampshire-based defamation, but *Seymour* would seem to forbid it insofar as it is based upon outside-New Hampshire activity. The difficulty with the case lies in the fact that, unlike *Seymour*, some of the activity about which the plaintiff complains took place in New Hampshire, but unlike *Buckley*, plaintiff lives outside of New Hampshire and most of the activity about which plaintiff complains took place outside the state.

This difficulty arises out of the special cause of action asserted in this case: a libel allegedly caused by a publication that circulated in more than one state. The distinctive element of a "multistate defamation" action is that the plaintiff must recover the damages caused in *all* states in one single suit. *Patch v. Playboy Enterprises, Inc.*, 652 F.2d 754, 757 (8th Cir. 1981); *Proctor v. Gissendaner*, 579 F.2d 876, 880 n.7 (5th Cir. 1978), *modified*, 587 F.2d 182 (5th Cir. 1979); *Eliah v. Ucatan Corp.*, 433 F.Supp. 309 (W.D.N.Y.1977); *Restatement (Second) of Torts* § 577A(4) (1977). Of course, in that suit, ordinarily "rights and liabilities . . . are determined by the local law of the state which . . . has the most significant relationship to the occurrence and the parties . . . ," *Restatement (Second) of Conflict of Laws* § 150 (1971)—a fact that minimizes the incentive to shop for a forum. But, this sensible conflicts rule does not necessarily apply to the forum's own statute of limitations—a statute which, if considered "procedural," will be applied by the forum state. *See Restatement (Second) of Conflict of Laws* §§ 104–05 (1971). Indeed, in this case, it seems likely that New Hampshire (unlike Ohio) would consider its statute of limitations procedural, and apply it, resurrecting an action that is dead everywhere else. *See Barrett v. Boston & Maine Railroad*, 104 N.H. 70, 178 A.2d 291 (1962); *Gordon v. Gordon*, 118 N.H. 356, 360, 387 A.2d 339 (1978); *Cf. Dupuis v. Woodward*, 97 N.H. 351, 88 A.2d 177 (1952). This fact explains why plaintiff wishes to sue in New Hampshire, but it does not automatically make it fair for her to do so.

Indeed, these very circumstances suggest why it would be unfair to allow plaintiff to sue. Nearly all the damages the plaintiff seeks arise from injury to her reputation outside of New Hampshire caused by activity that took place outside of New Hampshire. New Hampshire has no special interest in protecting a nonresident against this out-of-state activity. *Cf. Roy v. North American News Alliance Inc.*, 106 N.H. at 97, 205 A.2d 844. Moreover, even if we consider statutes of limitations "procedur-

al," we can still note that statutes of limitations in general—and certainly in plaintiff's home state—penalize a plaintiff who sleeps on her rights, as has Ms. Keeton, and provide defendant publishers security against lawsuits so long delayed. *See, e.g., Gregorie v. G. P. Putnam's Sons*, 298 N.Y. 119, 125, 81 N.E.2d 45 (1948); *Morrison v. National Broadcasting Co.*, 19 N.Y.2d 453, 459, 280 N.Y.S.2d 641, 227 N.E.2d 572 (1967). To allow a multistate defamation suit here would thwart such policies by exposing a publisher to the risk of suit covering all damage suffered everywhere as long as there is any state anywhere with a statute of limitations that has not yet expired. *Cf.* Martin, Constitutional Limitations for Choice of Law, 61 Cornell L.Rev. 185, 223 & n.124 (1976). Whatever small interest New Hampshire might have in awarding damages to a nonresident for New Hampshire injuries is outweighed by these other policies—at least here, where the in-state activity is so small a part of the total activity upon which the suit is based.

For these reasons, we believe that the small amount of New Hampshire activity does not sufficiently distinguish this case from *Seymour* to warrant a different result. We note that the Fifth Circuit has also held that an out-of-state plaintiff cannot sue an out-of-state publisher who has sent his publication into the forum state. *Curtis Publishing Co. v. Birdsong, supra. See* Comment, 67 Colum.L.Rev. 342, 363–64 (1967); Note, 45 Tex.L.Rev. 188 (1966). While we accept this case as support, we do not decide that an out-of-state plaintiff can *never* sue an out-of-state publisher for damage inflicted when his publication is sent into the forum state. Rather, considering this case on the individual facts alleged in the complaint, *cf. World-Wide Volkswagen Corp., supra*, we decide here only that the New Hampshire tail is too small to wag so large an out-of-state dog.

*Affirmed.*

APPENDIX

As to the personal defendant, N.H.R.S.A. 510:4(1) establishes:

Any person, who is not an inhabitant of this state, and who in person or through an agent transacts any business within this state, commits a tortious act within this state, or has the ownership, use or possession of any real or personal property situated in this state, submits himself or his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from or growing out of the acts enumerated above.

Jurisdiction over the corporate defendants is based on N.H.R.S.A. 300:11(c) [300:14] which in its relevant part states:

If a foreign corporation makes a contract to be performed in whole or in part by either party in New Hampshire, or if such foreign corporation commits a tort in whole or in part in New Hampshire, such acts shall be deemed to be doing business in New Hampshire by such foreign corporation and shall be deemed equivalent to the appointment by such foreign corporation of the secretary of the state of New Hampshire and his successors to be its true and lawful attorney upon whom may be served all lawful process in any actions or proceedings against such foreign corporation arising from or growing out of such contract or tort.