**Peter P. WASS, Plaintiff,**

**v.**

**AMERICAN SAFETY EQUIPMENT CORP.**

**and**

**American Safety Flight Systems, Inc., Defendants.**

**Civ. 81–0166–B.**

United States District Court, D. Maine.

Sept. 30, 1983.

Ronald R. Coles, Carletta M. Smith, Machias, Me., for plaintiff.

Richard C. Milazzo, New York City, Charles S. Einsiedler, Jr., Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, Me., for defendants.

## MEMORANDUM DECISION AND ORDER ACCEPTING RECOMMENDED DECISION OF MAGISTRATE

CYR, Chief Judge.

Defendant American Safety Equipment Corporation ("ASEC") objects to that portion of the Magistrate's recommended decision of April 26, 1983 which would deny

ASEC's motion to dismiss for insufficient service of process and for lack of personal jurisdiction. Upon *de novo* consideration the Court accepts all of the Magistrate's recommendations.

## SERVICE OF PROCESS

With respect to the contention that service of process was insufficient because of the failure of the U.S. Marshal's Service to file an affidavit of service in accordance with Me.R.Civ.P. 4(e),[1] "[f]ailure to make proof of service does not affect the validity of service." Fed.R.Civ.P. 4(g). *See also* Field, McKusick and Wroth, *Maine Civil Practice*, § 4.15 (although Maine rule omits federal rule provision that failure to make proof of service does not affect validity of service, no difference was intended by omission, substance of federal rule is "self-evident"). ASEC does not contend that it did not receive service, rather it is argued that the U.S. Marshal's Service form of "Receipt and Return" # U.S.M.–285 does not reflect the name and corporate title of the individual served.

Absent some contention that service was not made, Fed.R.Civ.P. 4(g) precludes ASEC "from attacking the validity of service on the technical ground of the process server's failure to make return in timely fashion or because the return is deficient in some way." 4 Wright and Miller, *Federal Practice and Procedure* Civil § 1130 at 541 (1969).

## PERSONAL JURISDICTION

ASEC argues that it is not subject to personal jurisdiction in Maine because it did not purposely avail itself of the privilege of conducting activities in Maine.[2]

On April 28, 1972 the Bellanca Aircraft Corporation (hereinafter "Bellanca" ) sold a Bellanca Citabria Model 7ECA airplane to a Rochester, New York flying service. *See* Einsiedler affidavit, exhibit A. ASEC has sold seat belts to Bellanca for incorporation into its airplanes in Bellanca's Wisconsin and Minnesota manufacturing plants. *See* Drake affidavit, ¶ 10; Vangstad affidavit ¶ 7.

On May 19, 1972 the Rochester flying service sold the Bellanca airplane to a Connecticut partnership which in turn sold the Bellanca approximately two years later to Lowell Manery of East Hartford, Connecticut. On September 30, 1978 Lowell Manery sold the Bellanca to plaintiff, who has been a Maine resident at all times material to this case. Plaintiff purchased the Bellanca with seat belts[3] designed and manufactured either by ASEC or by ASEC's wholly-owned subsidiary, American Safety Flight Systems, Inc. (hereinafter "ASFS").[4]

On August 25, 1980 the Bellanca lost altitude and crashed while being operated by plaintiff in Maine. Although plaintiff had secured his seat belt prior to the crash, on impact the belt came loose from the fitting which attached it to the floor of the plane. On September 24, 1981 plaintiff filed a four-count complaint against ASEC and ASFS demanding damages for strict liability (Count I), negligent design (Count II), breach of express and implied warranties of merchantability (Count III), and

---

**1.** Maine Rule of Civil Procedure 4(e) provides:
(e) Personal Service Outside State. A person who is domiciled in the state or a person who has submitted to the jurisdiction of the courts of the state may be served with the summons and complaint outside the state, in the same manner as if such service were made within the state, by any person authorized to serve civil process by the laws of the place of service or by a person specially appointed to serve it. An affidavit of the person making service shall be filed with the court stating the time, manner, and place of service. Such service has the same force and effect as personal service within the state.

**2.** The findings of fact pertaining to the personal jurisdiction issue are controlling for purposes of the present motion only.

**3.** It is not known at this time whether the seat belt was original equipment or added after the sale by Bellanca, but it is known that plaintiff did not alter the seat belt.

**4.** ASFS was an wholly-owned subsidiary of ASEC at least until plaintiff purchased the airplane. *See* Drake deposition at 59, 62. In 1979 ASEC sold all but two divisions of ASFS to another corporation. *Id.* at 62–63.

breach of implied warranty of fitness for a particular purpose (Count IV).

ASEC is a New York corporation having its principal place of business in Michigan. ASFS is a Florida corporation having a principal place of business in California. Since the early 1960's ASEC has been manufacturing seat belts for the automotive industry, the aircraft industry, the trucking industry, and the recreational vehicle industry. Drake deposition at 41–42. Until November, 1977 ASEC also manufactured and engaged in worldwide sales of work gloves and motorcycle helmets. *Id.* at 43.

ASEC sells its seat belts and related equipment to wholesalers and retailers in many states in the United States as well as overseas. *Id.* at 45. It currently sells its automotive seat belts to Chrysler, Ford, and American Motors. *Id.* at 41–42, 46. Its aircraft seat belts are currently being sold to Pan Am, Delta, U.S. Air, Air Canada, Japan Airlines, and Scandinavian Airlines, as well as to wholesalers of aircraft parts. *Id.* at 46, 72–73. As of December 6, 1982, ASEC's customer list, exclusive of automotive seat belt customers, contained 2,607 active purchaser accounts in 33 states, most of the provinces of Canada, and six other foreign countries. Twelve vendors are located in Massachusetts; two are located in Rhode Island. *See* Drake deposition at 24–31 and deposition exhibit printout.

In addition to its headquarters in Michigan, ASEC has business operations in Missouri; three cities in California; Toronto, Canada; Juarez, Mexico; two locations in Great Britain; Paris, France; and Barcelona, Spain. Drake deposition at 10–13. ASEC directly employs at least 1,300 people. *Id.* at 53–55. Corporations in New Jersey, Ohio, Korea, Japan, Australia, and New Zealand are licensed to sell ASEC seat belts. *Id.* 10–13, 56–57.

Although ASEC has no salesmen stationed in Maine, owns no real or personal property in Maine and has not registered to do business in Maine, in 1980 ASEC sold $10,727[5] worth of its lap or lap-and-shoulder belts (350 belts) to a Maine company (AeroFab) which refurbishes aircraft interiors. In 1981 ASEC sold 50 lap belts to the same Maine firm, grossing $518.[6] In 1982 ASEC sold AeroFab $1,727 worth of equipment. As of December 4, 1982 ASEC was still selling to AeroFab. *See* Drake deposition at 74–75.

ASEC also sells aircraft seat belts to a wholesaler of airplane accessories (Van Dusen Aircraft Supplies) which publishes a widely distributed aircraft equipment catalog. Drake deposition 72–73. The Van Dusen catalog is distributed to all Maine airports and is a source of aircraft parts and supplies for airports and pilots throughout Maine. Smith affidavit of February 17, 1982 at ¶ 1.

Besides its seat-belt sales contacts with Maine, in May 1979, *see* Drake deposition at 71, ASEC authorized a company selling industrial safety glasses in Maine, (1) to use ASEC's trade name "American Safety" for a period of time, and (2) to document transactions with ASEC invoices. Hocevar affidavit, ¶¶ 11 and 12; Smith affidavit, exhibits 3–7, 10; ASEC's Memorandum, filed February 3, 1982, at 4–7; Drake deposition at 66. Plaintiffs have also produced invoices reflecting sales of $830 in safety glasses and accessories to a Portland, Maine fire equipment dealer on five occasions between July 2 and December 4, 1980. The name "American Safety Equipment Corporation" is printed on the face of four of those invoices, beside a $1'' \times \frac{1}{2}''$ representation of ASEC's registered trademark. On the reverse side of each of the five invoices, immediately above the terms and conditions of sale, appears in bold-faced letters "AMERICAN SAFETY EQUIPMENT CORP." *See* Smith affidavit of December 15, 1981, exhibits 3–7.

■ The Maine Supreme Judicial Court has instructed that:

---

**5.** ASEC's gross sales for its lap belt division totaled $5.5 million in 1980. Drake deposition, ¶ 5.

**6.** ASEC's gross sales for 1981 totaled approximately $6.3 million.

[U]nder the Maine long-arm statute, 14 M.R.S.A. § 704–A, the statutory reach of our courts is made coextensive with the exercise of personal jurisdiction which is permissible under the due process clause of the federal constitution. *Tyson v. Whitaker,* 407 A.2d 1, 3 (Me.1979). Thus, in this case involving the assertion of jurisdiction over a non-resident defendant, the single question to be resolved is whether due process requirements are satisfied.

*Foreside Common Development Corp. v. Bleisch,* 463 A.2d 767 at 769 (Me.1983) (Footnote omitted).[7]

The basic legal standard imposed by the Due Process Clause is whether it is "reasonable" or basically "fair" to subject the defendant to suit in this forum under these circumstances. *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Seymour v. Parke, Davis & Co.,* 423 F.2d 584 (1st Cir.1970). And, the Supreme Court has recently provided guidance for interpreting the "reasonableness" standard. In *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980), it wrote,

> Implicit in this emphasis on reasonableness is the understanding that the burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of other relevant factors, including the forum State's interest in adjudicating the dispute, *see McGee v. International Life Ins. Co.,* 355 U.S. 220, 223 [78 S.Ct. 199, 201, 2 L.Ed.2d 223] (1957); the plaintiff's interest in obtaining convenient and effective relief, *see Kulko v. California Superior Court,* [436 U.S. 84, 92 [98 S.Ct. 1690, 1696, 56 L.Ed.2d 132] (1978)], at least when that interest is not adequately protected by the plaintiff's power to choose the forum,

*cf. Shaffer v. Heitner,* 433 U.S. 186, 211, n. 37 [97 S.Ct. 2569, 2583, 53 L.Ed.2d 683] (1977); the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies, *see Kulko v. California Superior Court, supra* 436 U.S. at 93, 98 [98 S.Ct. at 1697, 1700.]

Thus, the Supreme Court would have us judge "reasonableness" and "fairness" not exclusively from the point of view of defendants' contacts with the State. To the contrary, "[i]f a defendant has certain judicially cognizable ties with a State, a variety of factors relating to the particular cause of action may be relevant to the determination whether the exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.' " *Rush v. Savchuk,* 444 U.S. 320, 332, 100 S.Ct. 571, 579, 62 L.Ed.2d 516 (1980) (emphasis supplied).

*Keeton v. Hustler Magazine, Inc.,* 682 F.2d 33, 34 (1st Cir.1982).

Applying these standards the Court is convinced that its exercise of personal jurisdiction over ASEC would contravene neither of the primary purposes of the "minimum contacts" requirement—that is, the protection of defendants from "the burdens of litigating in a distant or inconvenient forum ... [and] ensur[ing] that States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a Federal system." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980).

ASEC has presented no evidence or argument indicating that it would be burdened in any significant way by having to litigate this case in Maine as opposed to Michigan

---

7. To sustain personal jurisdiction over a foreign corporation, "the court must find both that personal jurisdiction is authorized by the local statute and that the exercise of such jurisdiction does not violate the due process requirement that the nonresident defendant have certain 'minimum contacts' with the forum state." *Commonwealth of Puerto Rico v. S.S. Zoe Colocotroni,* 628 F.2d 652, 667 (1st Cir.1980).

or any other state.[8]  Other relevant considerations add no weight to ASEC's position. Maine has a very significant interest in the manufacture and design of seat belts placed aboard airplanes owned by Maine residents and operated in Maine. *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957) (California had "a manifest interest" in providing effective means of redress for its residents when insurers refuse to pay claims); *Keeton v. Hustler Magazine, Inc.*, 682 F.2d at 34 (New Hampshire's interest in deterring wrongful conduct within its boundaries); *American Foreign Insurance Associates v. Commercial Insurance Co.*, 575 F.2d 980, 982 (1st Cir.1978) (Puerto Rico's "very important interest in protecting the rights of its citizens" injured by defective bottles), *Seymour v. Parke, Davis & Company*, 423 F.2d 584, 587 (1st Cir.1970) ("If the plaintiff has some attachment to the forum ... we would have no question of the right of the State to subject the defendant to suit for unconnected causes of action.")  (dicta).

Plaintiff's interests in a Maine forum are strong since he is a Maine resident and the witnesses at the accident scene as well as the witnesses as to damages are Maine residents.  The important public interest in promoting the efficient resolution of legal disputes is served by the selection of a Maine forum, since most states [9] would apply Maine law to this action, and Maine courts, including the federal court sitting in Maine, *see* 1A, Pt. 2 *Moore's* Federal Practice ¶ 0.309[2] at 3125 (1983), are presumably more capable of an efficient application of Maine law.

With respect to the second function served by the "minimum contacts" requirement, the Supreme Court has stated:

[T]he Due Process Clause "does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations." *International Shoe Co. v. Washington, supra* [326 U.S.] at 319 [66 S.Ct. at 160].  Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment. *Hanson v. Denckla, supra*, [357 U.S. 235] at 251, 254 [78 S.Ct. 1228 at 1238, 1240, 2 L.Ed.2d 1283 (1958)].

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 294, 100 S.Ct. at 565–66.

ASEC has had sufficient contacts, ties and relations with Maine upon which to predicate the exercise of personal jurisdiction by Maine courts.  In 1980 and 1981 alone, ASEC sold 400 airplane seat belts directly to a Maine company which refurbishes airplanes in Maine.  It is reasonable to infer that a great many, if not most, of those seat belts will be used by Maine residents within Maine.  In addition to these Maine ties, it is reasonable to assume that there are in Maine hundreds of *automotive* seat belts manufactured by ASEC and sold to Chrysler, Ford, or American Motors.  Furthermore, one of ASEC's major purchasers of aircraft seat belts, Delta Airlines, regularly serves Maine with both intrastate and interstate passenger flights.[10]  In light of these contacts, as well

---

**8.** The Supreme Court recently noted that as modern transportation and communication continue to develop, it becomes less and less burdensome for a party to defend in a State where it is engaged in economic activity. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293, 100 S.Ct. 559, 565, 62 L.Ed.2d 490 (1980).

**9.** Most states follow the choice-of-law rules of the Restatement (Second) of Conflicts § 146.

**10.** Numerous other airlines use Bangor International Airport as a refueling point for transatlantic flights.  Although plaintiff has not presented evidence as to the frequency with which ASEC seat belts come into Maine aboard any of the international airlines, the magnitude of ASEC's sales ($6.3 million in 1981) strongly suggests that the incidence would not be insubstantial.

as ASEC's authorization to Am/Safe to use ASEC's name, trademark and invoices in Maine, ASEC should reasonably have anticipated being haled into Maine courts in connection with its seat belt sales.

"The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State. *Cf. Gray v. American Radiator & Standard Sanitary Corp.* [22 Ill.2d 432, 176 N.E.2d 761 (1961) ]."

*World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. at 297–98, 100 S.Ct. at 567–68. *See also Vencedor Mfg. Co., Inc. v. Gougler Industries,* 557 F.2d 886, 889 (1st Cir.1977) (breach of contract action was "related to" defendant's in-state activities where those activities involved sales of similar products to others in same state).

ASEC's motions to dismiss are therefore DENIED.