Northeast Robotics v. Dolan-Jenner    CV-95-92-SD    11/27/95

UNITED STATES DISTRICT COURT FOR THE

                         DISTRICT OF NEW HAMPSHIRE


Northeast Robotics, Inc.

     v.                                    Civil No. 95-92-SD

Dolan-Jenner Industries, Inc.;
Charles Clarkson;
Bernard Dolan


                              O R D E R


     In this civil action, plaintiff Northeast Robotics, Inc.
(NER) alleges a federal claim of false designation of source in
violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)
(1982), against defendants Dolan-Jenner Industries, Inc. (DJI);
Charles Clarkson, president of DJI; and Bernard Dolan, chairman
and chief executive officer of DJI.  In addition to its federal
claim, NER alleges state law claims of (1) unfair methods of
competition; (2) passing off; (3) misappropriation; and (4)
unjust enrichment against all defendants.

     The court has jurisdiction over these matters due to the
federal question at issue, 28 U.S.C. §§ 1331, which extends to
the supplemental state law issues as well, 28 U.S.C. § 1367.

     Presently before the court is each defendant's motion to
dismiss for lack of personal jurisdiction pursuant to Rule

12(b)(2), Fed. R. Civ. P., to which plaintiff has accordingly and appropriately objected.

<u>Background</u>

NER, a New Hampshire corporation, is in the business of designing, manufacturing, and selling lighting equipment. DJI, a Massachusetts corporation, is in the business of manufacturing and selling competing lighting equipment. At least as early as January 1992, NER developed technology related to machine vision lighting, and, in connection with lighting equipment associated with that technology, NER began using the trademarks DOAL and DIFFUSE ON-AXIS LIGHT. Complaint ¶¶ 10-11. On August 10, 1994, NER filed a trademark application (serial number 74/559383) for the DOAL trademark with the United States Patent and Trademark Office (PTO) based upon use of the trademark in interstate commerce. <u>Id.</u> ¶ 13. On October 25, 1994, NER filed a trademark application (serial number 74/590556) for the DIFFUSE ON-AXIS LIGHT trademark with the PTO based upon a bona fide intention to use the trademark in interstate commerce. <u>Id.</u> ¶ 14.

On or about January 28, 1992, NER and DJI entered into a Technology Development and Product Distribution Agreement (Technology Agreement) (attached as Exhibit 1 to defendant DJI's memorandum of law). The Technology Agreement provided that NER

2

would design, develop, and distribute new and improved technical lighting products, which would be manufactured and marketed by DJI. The Technology Agreement also provided, inter alia, that (1) NER would grant DJI an exclusive license to commercialize and distribute DOAL products; (2) that NER would actively assist DJI in improving and marketing DOAL technology; and (3) DJI would pay NER a royalty on DJI's sales of DOAL products.[1] The Technology Agreement contained no express provision regarding the transfer or licensing of rights to the DOAL trademark or the DIFFUSE ON-AXIS LIGHT trademark.

NER alleges, inter alia, that DJI was orally licensed to use the two trademarks. Complaint ¶ 10. NER also alleges that commencing in the spring of 1994, and on many occasions during the summer and fall of 1994, it sought to negotiate a formal trademark license concerning the use of the DOAL trademark by DJI. Id. ¶ 19. These efforts to negotiate a formal license failed, and by at least November 1, 1994, NER had notified DJI to cease and desist from all further use of the DOAL trademark, or any confusingly similar trademarks. Id. ¶¶ 22-23.

---

[1]The court notes that royalty payments were to continue until either the unsuccessful completion of NER's attempt to obtain a patent upon technical features of the DOAL products or the termination of any such patent obtained. See Technology Agreement at 3-4.

3

<u>Discussion</u>

<u>1.  Personal Jurisdiction Standard</u>

"Personal jurisdiction implicates the power of a court over a defendant."  <u>Foster-Miller, Inc. v. Babcock & Wilcox Can.</u>, 46 F.3d 138, 143 (1st Cir. 1995).  "In a federal court, both its source and its outer limits are defined exclusively by the Constitution."  <u>Id.</u>

Due to a lack of continuous and systematic activity in the forum, specific, rather than general, personal jurisdiction, is at issue in the instant case.[2]  Specific personal jurisdiction turns on "the plaintiff's ability to satisfy two cornerstone conditions: 'first, that the forum in which the federal district court sits has a long-arm statute that purports to grant jurisdiction over the defendant; and second, that the exercise of jurisdiction pursuant to that statute comports with the strictures of the constitution.'"  <u>Id.</u> at 144 (quoting <u>Pritzker v. Yari</u>, 42 F.3d 53, 60 (1st Cir. 1994), <u>cert. denied sub nom.</u>, <u>Yari v. Pritzker</u>, ___ U.S. ___, 115 S. Ct. 1959 (1995)).  Of the two specific personal jurisdiction conditions identified by the First Circuit, the latter condition "implicates three distinct

_____

[2]General personal jurisdiction can be applied when "the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state."  <u>Foster-Miller</u>, <u>supra</u>, 46 F.3d at 144.

4

components, namely, relatedness, purposeful availment (sometimes called 'minimum contacts'), and reasonableness . . . ." Id. (footnote omitted).

In what is now well-settled law, when a court's personal jurisdiction over a defendant is contested, plaintiff bears the burden of demonstrating that such jurisdiction exists. Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992); Ealing Corp. v. Harrods, Ltd., 790 F.2d 978, 979 (1st Cir. 1986) (citing McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936)). The court can assess the plaintiff's success at meeting this burden by any one of at least a "trio of standards, each corresponding to a level of analysis . . . ." Foster-Miller, supra, 46 F.3d at 145. The conventionally applied standard,[3] called the prima facie standard, "permits the district court 'to consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction.'" Id. at 145 (quoting Boit, supra, 967

---

[3]Another available standard, called the preponderance standard, requires the court "to embark on a factfinding mission in the traditional way, taking evidence and measuring the plaintiff's jurisdictional showing against a preponderance-of-the-evidence" burden. Foster-Miller, supra, 46 F.3d at 145. By necessity, this standard involves "a full-blown evidentiary hearing at which the court will adjudicate the jurisdictional issue definitively before the case reaches trial." Id. at 146. Still another standard, called the likelihood standard, is applied when "the special circumstance in which the assertion of jurisdiction is bound up with the claim on the merits." Id.

5

F.2d at 675).

In the instant case, no evidentiary hearing has been requested, and the assertion of jurisdiction does not appear to be bound up with the claim on the merits.  Thus, it is appropriate for the court to apply the prima facie standard.  See General Contracting & Trading Co., L.L.C. v. Interpole, Inc., 899 F.2d 109, 115 (1st Cir. 1990).  Under this standard, the court proceeds only upon the written submissions, and the plaintiff need only make a prima facie showing that jurisdiction exists.  United Elec. Radio & Machine Workers v. 163 Pleasant Street Corp., 987 F.2d 39, 43 (1st Cir. 1993); see also Boit, supra, 967 F.2d at 675; Kowalski v. Doherty, Wallace, Pillsbury & Murphy, 787 F.2d 7, 8 (1st Cir. 1986) (citation omitted).  In this context, the term "prima facie showing" requires that the plaintiff show the existence of "every fact required to satisfy 'both the forum's long-arm statute and the due process clause of the Constitution.'"  Boit, supra, 967 F.2d at 675 (quoting U.S.S. Yachts, Inc. v. Ocean Yachts, Inc., 894 F.2d 9, 11 (1st Cir. 1990)).

Further, although plaintiff's "written allegations of jurisdictional facts are construed in its favor," VDI Technologies v. Price, 781 F. Supp. 85, 87 (D.N.H. 1991) (citing Kowalski, supra, 787 F.2d at 9), the prima facie showing of

6

personal jurisdiction "must be based on evidence of specific facts set forth in the record," Boit, supra, 967 F.2d at 675 (citing Kowalski, supra, 787 F.2d at 9). The court, in reviewing the record before it, "'may consider pleadings, affidavits, and other evidentiary materials without converting the motion to dismiss to a motion for summary judgment.'" VDI Technologies, supra, 781 F. Supp. at 87 (quoting Lex Computer & Mgmt. Corp. v. Eslinger & Pelton, P.C., 676 F. Supp. 399, 402 (D.N.H. 1987) (citation omitted)); see also 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1364 (1990).

## 2. Dolan-Jenner Industries

### a. Long-arm Jurisdiction and Foreign Corporations

Although New Hampshire Revised Statutes Annotated (RSA) 510:4, I, dictates when a nonresident defendant individual is subject to personal jurisdiction in New Hampshire, see infra note 7, this court has previously ruled "that RSA 293-A:15.10 is the new long-arm statute governing jurisdiction over foreign corporations in New Hampshire." McClary v. Erie Engine & Mfg. Co., 856 F. Supp. 52, 55 (D.N.H. 1994).[4]

_____

[4]Under RSA 293-A:15.10,

> (b) A foreign corporation may be served by registered or certified mail, return receipt requested, addressed to the secretary of the

"Because RSA 293-A:15.10 reaches to the federal limit, the traditional two-part personal jurisdiction inquiry collapses into the single question of whether the constitutional requirements of due process have been met."  Id. (citing Dehmlow v. Austin Fireworks, 963 F.2d 941, 945 (7th Cir. 1992)) (parenthetical quotation omitted).

Inasmuch as it is undisputed that DJI is a foreign corporation, the court thus turns to the only relevant inquiry that pertains--whether this court's exercise of personal jurisdiction over DJI is consistent with the due process requirements of the Fourteenth Amendment.

b.  The Constitutional Due Process Requirements

---

foreign corporation at its principal office shown in its application for a certificate of authority or in its most recent annual report if the foreign corporation:
(1) has no registered agent or its registered agent cannot with reasonable diligence be served;
(2) has withdrawn from transacting business in this state under RSA 293-A:15.20; or
(3) has had its certificate of authority revoked under RSA 293-A:15.31.
. . . .
(d) This section does not prescribe the only means, or necessarily the required means, of serving a foreign corporation.

RSA 293-A:15.10(b), (d) (Supp. 1994).

8

To clarify the constitutional requirements of the personal jurisdiction inquiry, the First Circuit has developed the following tripartite analysis:

> "First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable."

Foster-Miller, supra, 46 F.3d at 144 (quoting United Elec. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992)) (other citations omitted). Each of these three components will be examined in turn.

### (1) Relatedness

"[T]he relatedness test is, relatively speaking, a flexible, relaxed standard," Pritzker, supra, 42 F.3d at 61, focusing on "the nexus between the defendant's contacts and the plaintiff's cause of action," Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 206 (1st Cir. 1994). "[T]he relatedness requirement . . . authorizes the court to take into account the strength (or weakness) of the plaintiff's relatedness showing in passing upon

9

the fundamental fairness of allowing the suit to proceed."  Id. at 207.

NER has made an uncontroverted showing that DJI's advertisements containing the DOAL mark reached New Hampshire. NER maintains that according to Thomas Publishing Company records "four hundred (400) copies of the 1993 edition of the Thomas Register were distributed in New Hampshire,"[5] and that "the circulation figures for 1994 and 1995 were not yet available but similar circulation figures were expected for those years." Affidavit of Gregory J. Cohen ¶¶ 4-5 (appended to NER's Objection and Memorandum of Law).

Based on the evidence before it, it is clear to this court that DJI's alleged forum-related advertising activity comprises the heart of NER's false designation of source cause of action. Therefore, the court finds and rules that NER has made a prima facie showing that DJI's in-forum advertising activity is highly related to NER's cause of action.

### (2) Purposeful Availment

The purposeful availment prong of the jurisdictional inquiry is not an arithmetic endeavor, but rather one of weight and

_____

[5]The Thomas Register is a currently distributed industrial publication with nationwide coverage.

10

merit.  See, e.g., Pritzker, supra, 42 F.3d at 61 ("[I]n order to be subject to the jurisdiction of the forum state, a nonresident need have only one contact with the forum, so long as the contact is meaningful." (citing McGee v. International Life Ins. Co., 355 U.S. 220, 223 (1957))).  Furthermore, any inquiry into a defendant's "purposeful availment" of the forum must entertain the dual cornerstones of purposeful availment--foreseeability and voluntariness.  Ticketmaster, supra, 26 F.3d at 207.  With respect to the "purposeful availment" inquiry, "knowledge that the major impact of the injury would be felt in the forum State constitutes a purposeful contact or substantial connection whereby the intentional tortfeasor could reasonably expect to be haled into the forum State's courts to defend [its] actions." Hugel v. McNell, 886 F.2d 1, 4 (1st Cir. 1989), cert. denied sub nom., McNell v. Hugel, 494 U.S. 1079 (1990) (citing Calder v. Jones, 465 U.S. 783, 789-90 (1984)).

Although DJI argues that none of DJI's activities actually occurred within New Hampshire, this argument rings false.  "'It is settled New Hampshire law that a party commits, for jurisdictional purposes, a tortious act within the state when injury occurs in New Hampshire even if the injury is the result of acts outside the state.'"  VDI Technologies, supra, 781 F. Supp. at 89 (quoting Hugel, supra, 886 F.2d at 3 (citations

11

omitted)). "When a non-resident defendant performs allegedly tortious acts in New Hampshire, little doubt clouds a finding that New Hampshire has jurisdiction." Estabrook v. Wetmore, 129 N.H. 520, 523, 529 A.2d 956, 958 (1987).

As described earlier, NER has shown that "four hundred (400) copies of the 1993 edition of the Thomas Register were distributed in New Hampshire." Cohen Affidavit ¶ 3. Thus the court finds that DJI should have known that any advertisement it placed in the nationally distributed Thomas Register would, even without good fortune, reach subscribers in New Hampshire.[6] Furthermore, because those advertisements included the alleged false designation of source, the court finds that the New Hampshire subscribers could have been impacted by DJI's advertisements.

Moreover, because New Hampshire was also the location of NER's facility and its base of operations during the time business was conducted between DJI and NER and during the time the advertisements were distributed within New Hampshire, the court further finds and rules that DJI knew or should have known

---

[6]The court does note, however, that at least one noted authority on trademark law indicates that "the mere sending of advertising for an infringing mark into a state is [not] a sufficient contact to establish personal jurisdiction in that state." 4 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 32.14[2][c] (3d ed. 1992).

12

that its allegedly tortious conduct could impact NER in New Hampshire and that such contact with the forum was "more than fortuitous."

In consideration of the preceding legal principles, and the facts as alleged by the plaintiff, the court finds that DJI can "fairly be charged with such knowledge regarding the effect of [its] intentional and allegedly tortious actions." VDI Technologies, supra, 781 F. Supp. at 92. Since DJI's actions to advertise the DOAL mark appear to be nothing less than voluntary on its part, and the possibility that a New Hampshire domiciliary would seek legal redress for such alleged actions in the courts of this forum is too plainly foreseeable, the court further finds that the "cornerstones" of the "purposeful availment" inquiry have been satisfied. Accordingly, the court finds and rules that the assertion of personal jurisdiction over DJI under these circumstances does not offend the dictates of due process.

### (3) Reasonableness: The Gestalt Factors

In addition to finding that the relatedness and purposeful availment requirements have been fulfilled, the court must "proceed to the third and final element of [the] analysis and inquire whether the exercise of jurisdiction over [DJI] in the circumstances of this case would, holistically viewed, offend

13

traditional notions of 'fair play and substantial justice.'"
Pritzker, supra, 42 F.3d at 63 (quoting Burger King Corp. v.
Rudzewicz, 471 U.S. 462, 476 (1984)) (other quotations omitted).
"'This means that, even where purposefully generated contacts
exist, courts must consider a panoply of other factors which bear
upon the fairness of subjecting a nonresident to the authority of
a foreign tribunal.'" Ticketmaster, supra, 26 F.3d at 209
(quoting United Elec. Workers, supra, 960 F.2d at 1088).

The five factors--dubbed the "gestalt factors" by the First
Circuit, see id.; see also United Elec. Workers, supra, 960 F.2d
at 1088--have been identified by the Supreme Court as the
following: (1) the defendant's burden of appearing, (2) the forum
state's interest in adjudicating the dispute, (3) the plaintiff's
interest in obtaining convenient and effective relief, (4) the
judicial system's interest in obtaining the most effective
resolution of the controversy, and (5) the common interests of
all sovereigns in promoting substantive social policies.
Ticketmaster, supra, 26 F.3d at 209 (citing Burger King, supra,
471 U.S. at 477). Though not ends in themselves, the gestalt
factors "are, collectively, a means of assisting courts in
achieving substantial justice." Id.

14

### (i) The Burden of Appearance

This court is cognizant that to a certain extent, because DJI is a Massachusetts domiciliary, it will be burdened by being required to appear in New Hampshire. However, "the concept of burden is inherently relative, and, insofar as staging a defense in a foreign jurisdiction is almost always inconvenient and/or costly, . . . this factor is only meaningful where a party can demonstrate some kind of special or unusual burden." Pritzker, supra, 42 F.3d at 64. DJI has made no such demonstration.

### (ii) Interest of the Forum

The forum's interest in moderating a suit brought by an aggrieved resident militates heavily in favor of an exercise of jurisdiction. See, e.g., Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 780 (1984) ("plaintiff's residence in the forum may, because of defendant's relationship with the plaintiff, enhance defendant's contacts with the forum"), rev'd on other grounds, 682 F.2d 33 (1st Cir. 1982); Ticketmaster, supra, 26 F.3d at 211 ("The forum state has a demonstrable interest in exercising jurisdiction over one who causes tortious injury within its borders."); Phelps v. Kingston, 130 N.H. 166, 175, 536 A.2d 740, 745 (1987) ("[T]he State of New Hampshire has a significant interest in affording injured New Hampshire plaintiffs a forum in

15

which to litigate the question of liability for their injuries."). Thus, this factor weighs in favor of NER.

### (iii) The Plaintiff's Convenience

Since the court "must accord plaintiff's choice of forum a degree of deference in respect to the issue of its own convenience," Ticketmaster, supra, 26 F.3d at 211, the court finds that the plaintiff's interest in obtaining convenient and effective relief cuts in favor of exercising jurisdiction.

### (iv) The Administration of Justice

The interest of the judicial system in obtaining the most effective resolution of the controversy does not appear to be strongly affected by whether this court exercises personal jurisdiction over DJI. That being said, however, the court notes that in an era where judicial resources are scant, this prong is insufficient to dislodge jurisdiction given the other compelling reasons for the court to retain same.

### (v) Pertinent Policy Arguments

In that defendant has not identified any substantive policy which may be advanced by this court's declination of jurisdiction, and the court has previously discussed the strong

16

interest a plaintiff's sovereign shares in providing a forum in which a resident may obtain redress for allegedly tortious activities, the court finds that the policy factor weighs, if at all, in favor of this court's exercise of jurisdiction.

### (4) Summarizing the Calculus

In order for a court to exercise in personam jurisdiction over an out-of-state defendant, there must exist a logical nexus between "the defendant, the forum, and the litigation." Keeton, supra, 465 U.S. at 780. Taking, as this court must, the allegations in the complaint and plaintiff's subsequent affidavit as true, and construing them in a manner most favorable to the plaintiff's position, the court hereby finds that DJI's advertising contacts with the forum form the very bedrock upon which plaintiff's cause of action is grounded. Ostensibly, DJI's actions were taken voluntarily, and it is too plain to question that the putative aggrieved, when seeking legal redress, would all but certainly litigate in its resident forum. Thus having found that the "purposeful availment" cornerstones of foreseeability and voluntariness have been satisfied, and having further found that the instant litigation arises out of, and thus directly relates to, DJI's contact with New Hampshire, the court further finds and rules that this court's exercise of personal

17

jurisdiction over DJI, being neither unreasonable nor fundamentally unfair, is both legally and constitutionally permissible. Defendant DJI's motion to dismiss for lack of personal jurisdiction, therefore, must be and herewith is denied.

3. Corporate Officers and Personal Jurisdiction

In addition to the corporate entity, plaintiff has sued Charles Clarkson, president of DJI, and Bernard Dolan, chairman and chief executive officer of DJI, in their individual capacities. Each alleging that this court lacks jurisdiction over his person, both Clarkson and Dolan seek dismissal on said ground.

Although the same legal requirements for asserting specific personal jurisdiction described supra in section 1 apply to the corporate officers named herein--specifically, a showing of satisfaction of the forum's long-arm statute and comportment with the strictures of the Constitution--additional factors must be considered when corporate officers are sued in their individual capacities.

With regard to the long-arm requirement,[7] the general rule

_____

[7]New Hampshire's long-arm statute provides as follows:

    I.  JURISDICTION.  Any person who is not an inhabitant of this state and who, in person or through an agent, transacts any business

18

in this circuit is that "jurisdiction over the individual officers of a corporation may not be based merely on jurisdiction over the corporation, . . . [but] must be [derived from] an independent basis for asserting long-arm jurisdiction . . . ." *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 906 (1st Cir. 1980) (citations omitted).[8]  "What is required is some showing of direct personal involvement by the corporate officer in some decision or action which is causally related to plaintiff's injury."  *Id.* at 907.  More thoroughly,

> merely being an officer or agent of a

---

> within this state, commits a tortious act within this state, or has the ownership, use, or possession of any real or personal property situated in this state submits himself, or his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from or growing out of the acts enumerated above.

RSA 510:4, I (1983).  The New Hampshire Supreme Court has determined that the scope of RSA 510:4 is as broad as is consistent with the statutory language and the dictates of due process.  *Phelps*, *supra*, 130 N.H. at 171, 536 A.2d at 742 (RSA 510:4 provides jurisdiction "to the full extent that the statutory language and due process will allow."); *see also Keeton*, *supra*, 682 F.2d at 33 (RSA 510:4 seeks "to extend jurisdiction over nonresidents to the fullest extent permitted under the federal constitution").

[8]It is likewise settled law that "an officer of a corporation 'is liable for torts in which he personally participated, whether or not he was acting within the scope of his authority.'"  *Escude Cruz*, *supra*, 619 F.2d at 907 (quoting *Lahr v. Adell Chem. Co.*, 300 F.2d 256, 260 (1st Cir. 1962)).

19

> corporation does not render one personally
> liable for a tortious act of a corporation.
> Specific direction or sanction of, or active
> participation or cooperation in, a positively
> wrongful act of commission or omission which
> operates to the injury or prejudice of the
> complaining party is necessary to generate
> individual liability in damages of an officer
> or agent of a corporation for the tort of the
> corporation.

Id.[9]

To establish jurisdiction under this paradigm, therefore, NER "need[] only to assert facts showing that [the corporate officers] committed [or caused to be committed] sufficient acts within [New Hampshire], the tortious nature of which would be the issue on the merits." Villa Marina Yacht Sales, supra note 9, 915 F.2d at 11; accord Foster-Miller, supra, 46 F.3d at 145 ("the court . . . must accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing").

a.  Charles Clarkson

Clarkson argues that NER is unable to satisfy either the

_____

[9]The court pauses here to note that despite references in the caselaw cited herein to "showings" rather than mere "averments", the standard in this circuit is not nearly so onerous. Indeed, the Circuit has acknowledged that "[r]equiring proof of the tortious nature of acts in order to assert jurisdiction would make the jurisdictional determination identical to the merits." Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 915 F.2d 7, 11 (1st Cir. 1990).

20

long-arm statute prong or the due process prong of the jurisdictional standard. With regard to the long-arm statute prong, Clarkson states, "I have never conducted business in the State of New Hampshire, either for myself individually, on behalf of any corporation of which I was an employee, or on behalf of [DJI]." Affidavit of Charles Clarkson ¶ 6 (appended to Clarkson's Motion to Dismiss). He further states, "I personally took no action and did not direct [DJI] to take any action which could be deemed to be an infringement of any alleged trademark . . . of Plaintiff." Id. ¶ 14.

In rebuttal, NER generally alleges that "Charles Clarkson, as President of [DJI], is believed to have participated directly in, and also ratified, the decisions regarding placing the infringing advertisement in the Thomas Register, entering into the Technology Agreement, negotiating a potential second licensing and technology agreement, and paying royalties to [NER] by [DJI]." Plaintiff's Memorandum of Law in Opposition to Clarkson's Motion ¶ 9.

Despite these otherwise insufficient general allegations, the court notes that Clarkson was copied in several letters authored by Dolan, which arguably address potentially tortious activities. See June 7, 1994, and July 15, 1994, Letters from Bernard J. Dolan to Timothy P. White (attached to White Affidavit

21

as Exhibits K and L). Furthermore, although the mere distribution of Dolan's letters to Clarkson does not conclusively indicate "[s]pecific direction or sanction of, or active participation or cooperation in, a positively wrongful act," Escude Cruz, supra, 619 F.2d at 907, by Clarkson, his involvement in the NER-DJI relationship was not altogether cursory, see June 7, 1994, Letter, supra at 3 (noting DJI's return of all "confidential written material supplied to us by [NER]" and acknowledging Clarkson as one of only 3 individuals at DJI who reviewed same). Construing NER's allegations and the relevant facts in a light most favorable to the NER, the court finds the issue of jurisdiction over Clarkson's person to present a very close call. Due to this circumstance, the court finds that the interests of justice will be best served if further, limited discovery is permitted on the extent of Clarkson's involvement in this matter. See Ziegler Chem. & Mineral Corp. v. Standard Oil Co., 32 F.R.D. 241, 243 (N.D. Cal. 1962); see also 27 FEDERAL PROCEDURE, L. ED. § 62:458, at 568 ("The court has considerable procedural leeway and, while it may determine the motion on the basis of affidavits alone, it may also permit discovery in aid of the motion . . . ."); id. at § 62:376, at 508 ("The trial court may properly accord an opportunity for discovery in aid of

22

establishing jurisdiction . . . .").

Accordingly, the court hereby defers making a ruling on Clarkson's motion to dismiss for lack of personal jurisdiction until after such limited discovery has occurred.  See Boit, supra, 967 F.2d at 680; Rich v. KIS California, Inc., 121 F.R.D. 254, 259 (M.D.N.C. 1988); Amoco Oil Co. v. International Bhd. of Elec. Workers, 536 F. Supp. 1203, 1211 (D.R.I. 1982).  Accord Whittaker Corp. v. United Aircraft Corp., 482 F.2d 1079, 1086 (1st Cir. 1973) ("recogniz[ing] that discovery concerning jurisdictional issues is appropriate where complex factual matters are in question and where a party has been diligent and is somewhat unfamiliar with his adversary").  The parties shall have 60 days from the date of this order to conduct such further limited discovery and file any supplemental memoranda with the court.  Cf. Amoco Oil, supra, 536 F. Supp. at 1211 (court granted conditional dismissal on jurisdictional issue pending submission of discovery schedule).

b.  Bernard Dolan

Dolan has provided a nearly identical set of sworn statements as Clarkson, and has specifically stated that "I have never conducted business in the State of New Hampshire, either for myself individually, on behalf of any corporation for which I

23

was an employee, or on behalf of [DJI]." Affidavit of Bernard Dolan ¶ 6 (appended to Dolan's Motion to Dismiss). Furthermore, Dolan states that he "took no action and did not direct [DJI] to take any action which could be deemed to be an infringement of any alleged trademark . . . of Plaintiff." Id. ¶ 14.

However, the evidence before the court shows that Dolan signed the Technology Agreement, see Technology Agreement at 5, and sent letters to NER in furtherance of a potential second licensing and technology agreement, see White Affidavit ¶¶ 12-13. The court notes that in one of these letters, Dolan provides the trademark symbol ™ after the phrase "D.O.A.L." and therefore may have indicated that he and DJI knew of and acknowledged NER's claim to the DOAL trademark. See June 7, 1994, Letter, supra, at 1.

Because these specific acts potentially relate to the willfulness of any tortious use of the DOAL trademark by DJI, the court finds and rules that NER has made a "showing of direct personal involvement by [Dolan] in some decision or action which is causally related to plaintiff's injury." Escude Cruz, supra, 619 F.2d at 907. Therefore, the requirement of "personal participation in tortious activity" is met, and thus the long-arm component of the personal jurisdiction standard is likewise met.

Relying on the due process analysis set out in section 2.b.,

supra, the court further finds and rules that Dolan, having contracted and negotiated on his corporation's behalf with a New Hampshire corporation, would not be unconstitutionally "surprised" by being haled into a New Hampshire court. This is especially so given that this litigation arises directly from the unsuccessful efforts of the parties to negotiate a formal licensing agreement. Accordingly, the court finds and rules that the due process concerns of the personal jurisdiction standard are satisfied.

Dolan's motion to dismiss for lack of personal jurisdiction therefore must be and herewith is denied.


## Conclusion

For the reasons set forth herein, the motions to dismiss for lack of personal jurisdiction filed by Dolan-Jenner Industries (document 6) and Bernard Dolan (document 8) are herewith each denied. A ruling on the jurisdictional motion to dismiss filed by Charles Clarkson (document 7) is deferred pending further discovery delimited strictly to the jurisdictional issue. The parties shall have 60 days from the date of this order to conduct such discovery and file supplemental briefs in aid of the court's

25

resolution of said matter.

    SO ORDERED.


                                           _____
                                           Shane Devine, Senior Judge
                                           United States District Court

November 27, 1995

cc:  Michael J. Bujold, Esq.
     John V. Dwyer, Esq.
     William A. DeVasher, Jr., Esq.